IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 05-266-03 (ESH) |
| | : | |
| GAYANE DAVTYAN, | : | |
| | : | **FILED** |
| Defendant. | : | SEP 1 3 2005 |

**FACTUAL PROFFER IN SUPPORT OF PLEA**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

The defendant GAYANE DAVTYAN and the United States agree that the following facts are true and correct, and that if this matter were to proceed to trial the United States would prove these facts beyond a reasonable doubt:

1. GAYANE DAVTYAN is a national of the Republic of Armenia ("Armenia"), who entered the United States on a nonimmigrant visa in 1991 and thereafter became a Lawful Permanent Resident (LPR) of the United States. During 2004-2005, she has resided in the vicinity of Los Angeles, California. Her sister, codefendant Nora Davtyan, is an Armenian national who resided in the vicinity of Yerevan, Armenia, until June 30, 2004, when she entered the United States on a nonimmigrant visa and joined GAYANE DAVTYAN in California. Codefendant Natalya Balayan ("Balayan") is an Armenian national who resides in the vicinity of Yerevan, Armenia, and is a longtime friend of Nora Davtyan. During 2003, Balayan entered into a romantic relationship with Piotr Zdzislaw Parlej ("Parlej"), a United States national who was employed as a consular officer at the United States Embassy in Yerevan, and they maintained that relationship into 2005.

2. As a consular officer, Parlej had official duties that included conducting in-person interviews of visa applicants, reviewing their visa application papers, and determining whether any given applicant was qualified under United States law to receive a visa for entry into the United States, and then issuing visas to those whom he deemed to be so qualified. One basis for refusing to issue a nonimmigrant visa is a determination that the applicant is an "intending immigrant" – that is, someone who was unlikely to return home after arriving in the United States, but who instead would remain in the United States without authorization. Once having been deemed an "intending immigrant", a person who thereafter re-applies for a nonimmigrant visa is unlikely to be issued one, without first presenting substantial evidence to overcome the presumption that he or she is still an "intending immigrant".

3. Nora Davtyan had previously applied for a United States nonimmigrant visa, but had been denied such a visa on grounds that she was deemed an "intending immigrant". In or about early Spring 2004, Nora Davtyan, Balayan, and Parlej entered into an agreement that Nora Davtyan would pay, through Balayan, a $4,000 bribe to Parlej for him to issue to her a United States nonimmigrant visa. On April 12, 2004, Parlej issued the visa to Nora Davtyan, and she paid the bribe. Nora Davtyan entered the United States on June 30, 2004; she did not return to Armenia when the visa expired, but instead remained in the United States without authorization. Before leaving Armenia, Nora Davtyan told Parlej she would find additional people willing to pay bribes for him to issue visas to them, and both he and Balayan agreed to the scheme.

4. When Nora Davtyan came to the United States, she resided with her sister GAYANE DAVTYAN, and told GAYANE DAVTYAN about how she had obtained her visa.

2

5. GAYANE DAVTYAN knew of a woman ("the woman") in the vicinity of Los Angeles, California, who had a mother-in-law in Armenia – referred to in the Indictment as "R.S." – who was an Armenian national. The woman wanted "R.S." to come to the United States, but "R.S." had applied for a United States nonimmigrant visa on three (3) occasions during 1999-2002, and on each occasion had been refused a visa on grounds that she was deemed an "intending immigrant". GAYANE DAVTYAN told the woman that her sister, Nora Davtyan, could arrange for "R.S." to obtain a visa, and introduced the woman to Nora Davtyan, who explained they were working with someone inside the United States Embassy in Yerevan. GAYANE DAVTYAN told the woman that it would cost "R.S." and the woman $15,000 for "R.S." to obtain a nonimmigrant visa, payable after the visa was issued. The woman agreed they would pay the bribe, and she gave to GAYANE DAVTYAN the phone number of "R.S." in Yerevan. Later, Balayan phoned "R.S." at that number.

6. On September 27, 2004, Parlej issued a United States nonimmigrant visa to "R.S." Thereafter, "R.S." paid $4,000 to Balayan in Yerevan, and the woman in California gave $11,000 to Nora Davtyan. Nora Davtyan passed $6,000 on to Parlej, through Balayan, and kept the remaining $5,000. Throughout these transactions, Nora Davtyan resided with GAYANE DAVTYAN.

7. On October 21, 2004, "R.S." entered the United States on the nonimmigrant visa; she did not return to Armenia when the visa expired, but instead remained in the United States without authorization.

3

8. GAYANE DAVTYAN knew that in telling the woman that it would cost $15,000 for "R.S." to obtain a United States nonimmigrant visa, she was soliciting a bribe for Nora Davtyan's associate inside the United States Embassy in Yerevan, and she knew the scheme was illegal.

9. At all times, with respect to the conduct described in this Factual Proffer, the defendant GAYANE DAVTYAN acted knowingly, unlawfully, purposefully, and with the specific intent to violate the law, and not by accident, inadvertence, mistake, or other innocent reason.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar Number 451058

By: *[signature]*

Brenda J. Johnson
Assistant United States Attorney
D.C. Bar No. 370737
202/353-4154
Brenda.Johnson@usdoj.gov

*[signature]*

Laura A. Ingersoll
Assistant United States Attorney
Connecticut Bar No. 306759
202/514-9549
Laura.Ingersoll@usdoj.gov

Transnational and Major Crimes Section
United States Attorney's Office
555 4th Street, N.W. – 11th floor
Washington, D.C. 20530

Dated: Sept. 13, 2005

4

After consulting with my attorney, William J. Garber, and pursuant to the plea agreement entered into this day between me, Gayane Davtyan, and the United States, I hereby stipulate and agree that the above Factual Proffer is true and accurate, and that had this matter proceeded to trial, the United States would have proved beyond a reasonable doubt the facts stated in the Factual Proffer.

9-13-05
Date

_____
Gayane Davtyan, Defendant

I am Gayane Davtyan's attorney. I have carefully reviewed the above Factual Proffer with her. To my knowledge, her decision to stipulate and agree to these facts is an informed and voluntary one.

9/13/06
Date

_____
William J. Garber, Esquire
Counsel for the Defendant